# AGREEMENT
# BETWEEN

## JFK HARTWYCK AT EDISON ESTATES/
## ~~JFK HARTWYCK AT CEDAR BROOK~~
## AND



## SEIU 1199 NEW JERSEY HEALTH CARE UNION,

## APRIL 1, 2005 THROUGH MAY 31, 2008

# TABLE OF CONTENTS

**JFK HARTWYCK AT EDISON ESTATES** ...............................................................4
  ARTICLE 1 – BARGAINING UNIT ..........................................................................5
  ARTICLE 2 – UNION SHOP ......................................................................................6
  ARTICLE 3 – UNION ACTIVITIES AND COMMUNICATIONS............................7
  ARTICLE 4 – PROBATIONARY PERIOD ................................................................8
  ARTICLE 5 – SENIORITY ..........................................................................................8
  ARTICLE 6 – LAYOFF AND RECALL......................................................................9
  ARTICLE 7 – TRANSFER AND PROMOTION ......................................................10
  ARTICLE 8 – NO DISCRIMINATION .....................................................................11
  ARTICLE 9 – DISCIPLINE AND DISCHARGE ....................................................12
  ARTICLE 10 – NO STRIKE - NO LOCKOUT .........................................................12
  ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE .....................13
  ARTICLE 12 - WORK WEEK ....................................................................................14
  ARTICLE 13 – WAGES ...............................................................................................16
  ARTICLE 14 – MEALS ................................................................................................17
  ARTICLE 15 – HOLIDAYS ........................................................................................17
  ARTICLE 16 – VACATIONS ......................................................................................19
  ARTICLE 17 – SICK LEAVE .....................................................................................19
  ARTICLE 18 – LEAVE OF ABSENCE......................................................................20
  ARTICLE 19 – BEREAVEMENT LEAVE ................................................................22
  ARTICLE 20 – LEAVE FOR JURY DUTY ..............................................................22
  ARTICLE 21 – MISCELLANEOUS PROVISIONS .................................................22
  ARTICLE 22 – UNIFORMS ........................................................................................23
  ARTICLE 23 – MAINTENANCE OF STANDARDS ...............................................23
  ARTICLE 24 – HEALTH AND SAFETY ..................................................................24
  ARTICLE 25 – MEDICAL EXAMINATIONS .........................................................24
  ARTICLE 26 – CHECK-OFF AUTHORIZATION ...................................................24
  ARTICLE 27 – SAVINGS CLAUSE ..........................................................................25
  ARTICLE 28 – CONTRACTING OUT ......................................................................25
  ARTICLE 29 – 1199 BENEFIT FUND .......................................................................26
  ARTICLE 30 – NATIONAL INDUSTRY PENSION FUND ....................................27
  ARTICLE 31 – PAYMENTS & ENFORCEMENT ...................................................29
  ARTICLE 32 – TRAINING & EDUCATION FUND.................................................30
  ARTICLE 33 – MANAGEMENTS RIGHTS .............................................................30
  ARTICLE 34 – LABOR/MANAGEMENT COMMITTEE .......................................31
  ARTICLE 35 – CREDIT UNION ...............................................................................32
  ARTICLE 36 – NEUTRALITY ...................................................................................32
  ARTICLE 37 – PATIENT CARE CONCERN...........................................................32
  ARTICLE 38 – STAFFING AND PATIENT CARE .................................................32
  ARTICLE 39 – PARTIES .............................................................................................33
  ARTICLE 40 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT .......33
  ARTICLE 41 – DURATION ........................................................................................34
  SCHEDULE A – EDISON ESTATES.........................................................................36
  SCHEDULE B: CERTIFICATION OF DOMESTIC PARTNERSHIP .....................38

## AGREEMENT

AGREEMENT made this 1ˢᵗ day of April 2005, by and between SEIU 1199 NEW JERSEY, SERVICE EMPLOYEES INTERNATIONAL UNION having its principal offices in the state of New Jersey, located at 555 Route One South, Iselin NJ 08830, hereinafter referred to as "the UNION" and JFK HARTWYCK AT EDISON ESTATES, hereinafter referred to as "the EMPLOYER", located at 10 Brunswick Avenue, Edison, in the State of New Jersey 08817.

## WITNESSETH

WHEREAS, the Union has been designated by a majority of the employees in the bargaining unit as their sole collective bargaining agent with respect to wages, hours and other conditions of employment; and

WHEREAS, it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and of dealing with problems and controversies arising out of employment is through negotiations and agreement, rather than through strikes and lockout;

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties agree as follows:

## ARTICLE 1 – BARGAINING UNIT

1.1    The Employer recognizes the Union as the sole and exclusive bargaining agent for all employees excluding registered nurses, office clerical employees, supervisors, watchmen and guards. In the event any dispute arises as to whether or not an employee does in fact, come within one of the included or excluded categories above mentioned, such dispute shall be determined in accordance with the arbitration procedures of this Agreement. No supervisor shall perform bargaining unit work, except for purposes of instruction or in any emergency.

1.2    Any additional classifications not presently covered shall become part of this Agreement when the union represents a majority within such classifications and shall be subject to separate negotiations between the parties. The result of such negotiations shall be attached as an appendix to this Agreement. The determination

negotiations shall be attached as an appendix to this Agreement. The determination of whether the Union does in fact represent a majority, if it be disputed, shall be determined in accordance with the arbitration procedures of this Agreement.

## ARTICLE 2 – UNION SHOP

2.1    As a condition of employment, employees of the Employer, covered by this Agreement shall, on or after the 30*th* day following the beginning of employment, the effective date of this Agreement, or the execution date of this Agreement, whichever is later, become members of the Union, but only to the extent that such membership requires that the employee pay the Union's initiation fees and periodic dues uniformly required in accordance with applicable laws.

2.2    In the event an employee covered by this Agreement fails to pay dues or service fees, as required, the Union shall notify the Employer in writing of such fact and the Union and the employee shall have ten (10) business days to adjust the matter. Should the matter not be adjusted within the allotted time, then the employee in question shall be forthwith discharged from the employ of the Employer, pursuant to an investigation of the employee's dues and initiation fee status by the Union and the Employer.

2.3    The Union agrees that membership in the Union shall be and shall remain available to all employees of the Employer covered by this Agreement on the same terms and conditions generally applied to other Union members covered by this agreement.

2.4    The Employer shall promptly upon hiring new employees notify them of the existence of the Union Agreement and the location of the bulletin board on which Shop Delegates names are posted.

2.5    The Employer shall forthwith give the Union a list containing the names and home addresses of employees covered by this Agreement, their categories, wages, social security numbers and dates of hire and shall thereafter promptly furnish each month the names, home addresses, dates of hire, categories, social security numbers and wages of all new employees in the bargaining unit.

## **ARTICLE 3 – UNION ACTIVITIES AND COMMUNICATIONS**

3.1    The Union shall be permitted to conduct Union meetings on the Employer's premises.

3.2    Staff representatives shall have access to the Employer's premises to discharge her duties as representative of the Union.  Upon entering the facility, the Union representative shall inform the receptionist upon her/his arrival.

3.3    Union Delegates and Committees elected or selected by the Union shall take up with the Employer during working hours at reasonable times problems that might arise at the place of employment.

3.4    Grievances shall normally be processed during the working hours of the affected employee(s).  Employees shall suffer no loss of pay on account of participating in grievance meetings.

3.5    The Employer shall provide to the Union a sufficient number of locked, glass enclosed bulletin boards at each work site for the posting of notices pertaining to Union activities.

3.6    Designated Union Delegates shall have up to thirty (30) minutes to orient new bargaining unit employees to the Union.  This will be part of the employee's normal orientation and shall cover topics related to this Agreement and SEIU 1199NJ.  Union Delegates shall not disparage the Employer in orientation.

3.7    In the interest of maintaining stability of labor relations and realizing that the handling of grievances by Delegates is an important step in the initial processing of grievances so as to encourage stability of labor relations, the parties agree that it is advisable from time-to-time, during each contract year, that a cumulative total of eighteen (18) days per year shall be paid to Union Delegates for lost time, at straight time rates, for the purpose of working on election day, attending conferences or Delegate training programs.  The Union shall provide two (2) weeks advance notice to the Employer and shall not request that more than one (1) Delegate from each unit on each shift shall attend such conferences and training programs at the same time.

3.8    The Employer shall grant Union leave up to one (1) year or the individual's length of service at the facility, whichever is less, shall be granted to employees in order to accept a position with the Union.  Time spent on Union

leave shall count as time worked for seniority and all other purposes. Upon returning to work at the facility, the employee shall return to substantially the same position (i.e., status, shift, job classification) as the employee held prior to the Union leave.

3.9    The Employer shall release members of the Union's Executive Board in its employ so that they may attend six (6) Board meetings per year with pay.

3.10   Negotiations. The Union negotiating committee, not to exceed eight (8) employees, to be paid for not more than three (3) negotiation sessions by the Employer at straight time rates.

## ARTICLE 4 – PROBATIONARY PERIOD

4.1    New employees shall be deemed probationary during the first ninety (90) days of their employment during which time they may be discharged for any reason which need not be stated by the Employer.

## ARTICLE 5 – SENIORITY

5.1    Seniority" shall be the length of an employee's continuous service from the employee's most recent date of hire by the Employer.

5.2    Seniority shall also accrue during paid leaves, military leaves, leaves of absence, or during the period which the employee receives disability benefits or workmen's compensation.

5.3    Seniority shall be terminated by:

  (a)    Discharge without being reinstated;

  (b)    Voluntary quit or resignation;

  (c)    Overstaying an authorized leave of absence, unless extended, or giving a false reason for such leave or acceptance of employment with any other employer during such leave of absence;

(d)    Layoff for a period of one (1) year or more, or if for any reason more than one (1) year has elapsed since the employee last worked for the Employer.

5.4    On March 30, June 30, September 30 and December 30 of each year, the Employer shall provide to the Union a list of bargaining unit employees with their bargaining unit seniority, rate of pay, status (part-time/full-time) and job classification. The Employer shall provide the seniority lists to the Union no later than fifteen (15) calendar days after the dates indicated above.

5.5    Delegates shall have top seniority for the purposes of layoffs in connection with Article 6 of this Agreement.

## ARTICLE 6 – LAYOFF AND RECALL

6.1    The Employer has the right to lay-off only for bona fide reasons, provided it shall not result in or require the remaining employees to assume substantially more work or duties or responsibilities in excess of what they were doing prior to layoff. Prior to finalizing any decision to reduce the work force, the Employer will notify the Union that such action is under consideration and the parties will meet to discuss the reasons and impact of such action and consider possible alternatives. If a layoff or reduction of hours then becomes necessary, the Employer will notify the Union of its intention to proceed as soon thereafter as reasonably possible but no less than fourteen (14) days in advance.

6.2    In the event of a layoff or reduction of hours, the Employer shall determine the positions (job classification, status, and shift) affected.

6.3    Temporary and probationary employees shall be laid off first. Then the employee with the least seniority in the affected position shall be laid off or reduced first. Affected employees shall be given at least twenty-four (24) hours to make their displacement or layoff choice. The displaced employee will have the options outlined below:

Displace the least senior employee with the same status and classification on another shift, provided he/she has more seniority than that employee;

or

Displace the least senior employee with the same status and shift in a classification he/she has previously held, provided he/she has more seniority than that employee;

or

Choose an unfilled position, provided he/she is qualified, without additional training.

or

Displace the least senior employee in any position for which he/she is qualified, provided he/she has more seniority than that employee;

or

Choose to take a layoff.

If more than one (1) employee is being laid off at one time, they shall exercise their various options according to seniority with the most senior employees going first.

6.4    When recall occurs, the employee laid off last shall be rehired first according to seniority.  Recalled employees will be notified by registered mail and they must respond within three (3) days.  If there is no response after three (3) days, the next most senior employee for that recalled position shall be notified.

## ARTICLE 7 – TRANSFER AND PROMOTION

7.1    When a permanent job vacancy occurs in the bargaining unit, and the Employer intends to fill the vacancy, or in the event of the creation of a new job within the bargaining unit, the Employer will post a notice of such vacancy for a period of seven (7) calendar days.  The posting shall include the job classification, pay grade, shift, weekend schedule, if any, floor/unit and status.  Bargaining Unit employees shall be eligible to bid on open positions occurring within the same shift and classification.

7.2    Each employee who has passed the probationary period may submit an application on the job bid form for the posted position prior to the end of the posting period.

7.3    During the posting period, the Employer will not make an offer to a non-employee, but may engage in screening or interviewing of non-employees.

7.4    (a)    The job shall be awarded to the qualified bidder with the most seniority who is employed in the same classification as the posted position. If there are no bidders from the classification where the vacancy exists, then the job shall be awarded to the qualified bidder with the most seniority from another job classification. Successful applicants will be placed in the new job no later than thirty (30) calendar days after the posting of the vacancy. If there are no qualified bidders from the bargaining unit, the Employer may hire from outside the bargaining unit.

(b)    A qualified bidder is one with the required licensure or certification, and whose performance evaluations and work record (attendance, discipline) demonstrate that the employee can perform the duties of the posted job in a manner which provides quality care and service to the residents.

7.5    An employee who successfully bids on a new position shall serve a trial period equal to the probationary period set forth in Article 4. If the employee does not pass the trial period, the employee may return to his/her former job level without loss of seniority. An employee may, during the first thirty (30) calendar days, elect to return to the former job without loss of seniority, if the job has not been filled or, if filled, may return to the former job level without loss of seniority. Employees who are awarded a new job after a bid, and who successfully complete the trial period, shall be precluded from bidding on another job for a period of six (6) months after the award.

## ARTICLE 8 – NO DISCRIMINATION

8.1    The opportunity to give and obtain employment without discrimination because of race, creed, color, age, sex, sexual orientation, marital status or national origin is hereby recognized by the parties to this Agreement. The Employer shall not discriminate against any employee because of Union activities.

## ARTICLE 9 – DISCIPLINE AND DISCHARGE

9.1    The Employer may not discharge or otherwise discipline a non-probationary employee without just cause.

9.2    If an employee receives a written reprimand, suspension or discharge, the Employer will state in writing the reason(s) for the discipline. The Employer agrees to provide a copy of written disciplinary notices to the employee, Delegate, and to the Union office within five (5) working days following the disciplinary action unless the employee specifically advises the Employer that he or she does not wish the Delegate to have a copy.

9.3    An employee will not be disciplined for an act(s) which occurred more than thirty (30) days prior to the issuance of discipline, unless the Employer was without knowledge of the act, in which case the thirty (30) days will be measured from the date the Employer should reasonably have known of the act, or unless the discipline shall be for acts which constitute a criminal felony or misdemeanor, in which case the thirty (30) days will be measured from the date of conviction or plea. This provision shall not apply to attendance issues which the Employer shall review on a quarterly basis.

9.4    An employee called to a disciplinary meeting shall be informed of the right to representation by a Union Delegate and The Employer shall comply with the employee's request.

## ARTICLE 10 – NO STRIKE - NO LOCKOUT

10.1    During the term of this Agreement, the Union shall not call or authorize any strike against the Employer at the establishment covered by this Agreement and the Employer shall not affect any lockouts. Should an employee or employees engage in any strike and should the Employer notify the Union of such action, a Representative of the Union shall, as promptly as possible, instruct such employee to forthwith cease such action and promptly return to their respective jobs and comply with the applicable provisions of this Agreement.

10.2    The Employer agrees that in consideration of the performance by the Union as set forth above, with respect to any strike which is contrary to the

provisions of this section, there shall be no liability for damages on the part of the Union, its officers, agents or members, for breach of contract, by suit or otherwise.

## ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE

11.1  All complaints, disputes or grievances whatsoever of whatever kind of nature arising between the Union and the Employer concerning any provisions of the contract, or with respect to any other acts, conduct or relations or terms or conditions of employment of whatsoever nature or otherwise, between the parties, directly or indirectly, shall constitute a grievance.

11.2  Any grievance not resolved shall be submitted for arbitration to the New Jersey State Board of Mediation, 50 Park Place, Seventh Floor, Newark, NJ 07102-4301 for selection in accordance with their rules and regulations. The arbitration shall be brought on by a written notice sent by the party requesting the same, addressed to the other party at the address set forth in this Agreement. Said notice shall be required to set forth the issues and it shall be sufficient if it merely states that a grievance or dispute exists between the parties. Any additional dispute or grievances, whether then in existence or arising after the sending of said notice, shall likewise, if so requested, be arbitrated at the time of the arbitration hearing, provided notice of the issues are set forth prior to the hearing. The Arbitrator, who is selected, shall upon such notice as he shall give to the parties, proceed to a hearing at a time and place fixed by him. All the aforesaid notices shall be deemed good and sufficient notice and the parties waive the application of any laws to the contrary. If either party fails, refuses or neglects to appear, then the Arbitrator shall hear the evidence of the parties appearing and render his decision as if both parties appeared. As many as five *(5)* employees called as witnesses in any arbitration proceeding shall not suffer any loss of pay and shall be made whole for all time lost from work as a result of appearing at such arbitration proceedings.

11.3  The decision of the Arbitrator shall be final and binding upon the parties and the employees shall conclusively determine the matter. There shall be no appeal from said decision and the decision shall have the effect of a judgment, which shall be entered upon the award in a court of competent jurisdiction. The oath of the Arbitrator is expressly waived except as provided in Section 21 hereof, the cost of arbitration shall be borne equally by both parties. The parties consent that any and all papers, notices, motions, petitions, subpoenas, legal process or other legal documents necessary or proper for initiation or continuation of an arbitration, or to enforce or confirm an award, or enter judgment thereon shall be

deemed duly and sufficiently served if served by ordinary mail directed to the party's address as set forth herein or to the party's attorney or by personal service within or without the state wherein the arbitration is to be held.

11.4  Service in the manner herein provided shall be sufficient to confer jurisdiction upon the Arbitrator to render his award and sufficient for a court of competent jurisdiction to confirm the award and enter judgment thereon. The Arbitrator is empowered to determine his jurisdiction, all questions of arbitrarily, to grant all appropriate remedies, to include in his award mandatory and injunctive relief and to determine the appropriate measure of damages.

11.5  The procedure herein provided for settling all complaints, disputes, or grievances shall be the sole and exclusive remedy of the Union, the Employer and employees covered by this Agreement. It shall be used to the exclusion of any other means available and such settlement procedure shall be (except to enforce, vacate or modify awards) in lieu of any and all other remedies, forums at law, in equity or otherwise, which will or may be available to the Union, the Employer and employees.

11.6  The maintenance of a peaceful and constructive relationship and industrial stability between the Union, the Employer and their employees, requires the use of the grievance and arbitration machinery for the settlement of all complaints, disputes and grievances, and that it would detract from this relationship if individual employees or groups of employees would either as such individuals or groups seek to interpret or enforce this Agreement on their own initiative or responsibility. No individual employee or group of employees may initiate any arbitration proceeding. All of the rights and privileges created by or implied from this Agreement shall be enforceable only in the manner established by this Agreement. All grievances shall be taken up with the Administrator within thirty (30) days after the occurrence which gives rise to the matter except for a continuing grievance which must be taken up within thirty (30) days from the date it was first discovered.

## ARTICLE 12 - WORK WEEK

12.1  The regular work week shall be thirty-seven and one-half (37 1/2) hours, consisting of five *(5)* consecutive days in any week. The work day shall consist of seven and one-half (7 1/2) consecutive hours each day, excluding thirty (30) minutes for meals. All hours worked in excess of seven and one-half (7 1/2)

hours in any one (1) day or thirty seven and one-half (37 1/2) hours in any week shall be paid for at the rate of time and one-half the regular hourly rate of pay.

12.2   All time worked by employees on their sixth (6th) work day of the week, irrespective of whether a holiday occurred during such week, shall be paid for at a rate of time and one-half the regular hourly rate of pay. All time worked by employees on their seventh (7th) work day of the week irrespective of whether a holiday has occurred during such week shall be paid for at a rate of time and one-half the regular hourly rate of pay.

12.3   Part-time employees (defined as employees who work less than twenty (20) hours per week) shall receive pro-rated pay, sick leave, holidays, vacations, etc., according to the hours paid. All other employees working less than the regular work week shall receive all fringe benefits pro-rated, according to the hours they are paid.

With respect to the Employer contributions to the Benefit Funds under Article 29, full contributions for, 1199 Health and Benefits Fund shall be made for all employees, part-time or full-time. The working time of part-time employees and all other employees working less than the regular work week shall be averaged over a period of three (3) months to determine the benefits to which he is entitled.

12.4   No employee will be transferred to a shift other than that for which said employee was hired, except by mutual consent. There shall be no change in the schedules, except on at least one (1) week's prior written notice to the Union.

12.5   There shall be no reduction in pay because of any reduction in the work week.

12.6   Each employee shall receive one (1) fifteen (15) minute break per shift.

12.7   No overtime shall be worked except with the prior written consent of the Union, except in cases of emergencies where there is insufficient time to obtain same.

12.8   **Weekend Absences.** Employees who do not report to work on a weekend as scheduled will he required to make up their weekend shift. Effective January 1, 2000, weekend absences will be monitored on a six (6) month basis (i.e., January to June; July to December). Any employee who has more than one

weekend absence in the designated six month time-frame will be required to make up all future absences during the remainder of that period. Weekend makeup shifts will be scheduled within one month of the weekend absence. The makeup weekend shall not be required for employees on an absence of six (6) consecutive days or more.

12.9   In the event the check distribution date needs to be changed by one (1) day in either direction to expedite payroll, employees are to be notified thirty (30) days in advance.

## ARTICLE 13 – WAGES

13.1   Effective May 1, 2005, post-probation rates contained in Schedule A shall be implemented and all current employees shall receive a three and one-half percent (3.5%) increase.

13.2   Effective May 1, 2006, the post-probation rates shall be increased by two and one-quarter percent (2 1/4%) and all employees earning below the 3-Year Step in the wage scale shall receive a two percent (2%) increase.  All other employee shall receive a four and one-quarter percent (4.25%) increase.

Effective November 1, 2006, the wage scales contained in Appendix A shall be in effect and employees with a wage rate less than the highest rate on the scale shall be placed on the appropriate step which corresponds with the employee's years of service as of her/his most recent anniversary date provided it is an increase of two percent (2%) or less.  The employee shall proceed to the next step on the scale on her/his next anniversary date.  Thereafter, each employee who is not above the wage scale shall be paid pursuant to Appendix A and proceed to the next step on the scale on her/his next anniversary date until the employee is at the top of the wage scale for her/his job title.

13.3   During the life of this Agreement, red circled employees shall receive the following additional wage increases during the term of this Agreement:

        5/1/2007            4.25%

13.4   If an employee transfers to a higher paid labor grade, the employee shall be placed at the starting rate or at the step that provides a minimum of three percent (3%) increase, whichever is greater.

13.5   The Employer in its sole discretion may pay new employees up to one dollar ($1.00) per hour less than the post probation rate while the employee is on probation.

13.6   Employees performing work of a higher classification should receive the rate of the higher classification.

13.7   LPN SPECIAL PAY.  If an LPN is the only nurse on the unit, he/she will receive a differential of 3% per shift in addition to his/her regular rate as pay.

13.8   Wages are to be paid in check or by direct deposit (at the request of the employee) and accompanying all pay shall be an itemized list of deductions. Effective January 1, 1997 wages shall be paid biweekly.

13.9   The Employer shall pay the cost of renewal of the Black Seal License.

## ARTICLE 14 – MEALS

14.1   Full, good and wholesome hot meals shall be furnished to each employee who works four (4) or more hours each day without cost to the employee. The failure, refusal, or omission of the Employer to do so shall obligate the Employer to pay the affected employee at the rate of two dollars ($2.00) per meal.

## ARTICLE 15 – HOLIDAYS

15.1   All employees shall receive the following holidays with pay:

| | |
|---|---|
| New Year's Day | Floating Holiday (1)* |
| President's Day | Memorial Day |
| Independence Day | Labor Day |
| Columbus Day | Thanksgiving Day |
| Christmas Day | Employee's Birthday |
| Personal Day (1)* | Martin Luther King Jr.'s Birthday** |

L.P.N.'s shall receive a personal day in lieu of Martin Luther King's Birthday.

Employees who have completed or complete twenty (20) or more years of services shall receive an additional Personal day each year.

Employees shall be eligible for the floating holiday after the ninety (90) day probationary period.

Employees who are out on sick leave for a period not exceeding two (2) months shall be entitled to the foregoing holidays with pay.

15.2   All leap-year birthday employees shall have an equivalent day off each year. The day of an employee's birthday as set forth on his application for employment shall be conclusive upon the Employer. If a holiday or the employee's birthday falls on one of his days off, he shall still be entitled to the holiday or birthday pay. Birthday Holidays shall be recognized on Saturday and Sunday. Employees must work three (3) months in each calendar year before becoming eligible for personal days. All employees hired prior to January 1 each year shall be entitled to use the floating holiday anytime after January 1 each year. Employees hired after February 28 will not be entitled to a floating holiday for that year.

15.3   Should it be necessary for an employee to work on any of the holidays to which he is entitled, he shall receive his regular straight time pay in addition to the holiday pay.

15.4   Employees shall be notified by the Employer five (5) working days in advance, in the event the said Employer requires such employee or employees to work on the holiday.

15.5   If any one of the holidays or the employee's birthday occurs during his vacation period, such employee shall be entitled to receive an additional day's pay in lieu thereof.

15.6   In order to qualify for Holiday pay an employee must work on his or her own regularly scheduled work day before and after the holiday.

15.7   For the purposes of determining the recognized holiday for night shift employees, the holiday shall be determined by the calendar day on which the recognized holiday falls and the employee's shift begins.

## ARTICLE 16 – VACATIONS

16.1   Vacations with full pay at the employee's prevailing rate of pay at the time of vacation shall be granted to full length of service in the establishment and not merely based on length of ownership of the establishment by the Employer as follows:

### LICENSED PRACTICAL NURSES

| | |
|---|---|
| 6 months but less than 1 year | 5 days |
| 1 year but less than 2 years | 10 days |
| 2 years but less than 4 years | 15 days |
| 4 years or more | 20 days |

### All Other Employees

| PERIOD OF SUBSTANTIAL EMPLOYMENT | AMOUNT |
|---|---|
| 6 months but less than 1 year | 5 days |
| 1 year but less than 5 years | 10 days |
| 5 years but less than 9 years | 15 days |
| 9 years or more | 20 days |

16.2   Vacation assignments shall be made by the Employer and the Union to insure the orderly and efficient continuation of operations. But, the Employer agrees to give, whenever possible, the desired vacation time on a consecutive basis indicated by the employee in order of seniority. Vacation pay shall be paid on the last regularly scheduled payday prior to such vacation. If any employee's employment terminates for any reason whatsoever, after six (6) months of substantial employment or more he shall receive pro-rated vacation pay. Breaks in service not exceeding three (3) consecutive months shall not affect an employee's eligibility for vacation benefits.  When resigning, an employee must be employed one (1) year and shall give at least two (2) weeks advance notice of her/his resignation, unless reasonably unable to do so, in order to receive accrued time.

## ARTICLE 17 – SICK LEAVE

17.1   Sick leave to be paid at the rate prevailing at the time of accrual.

17.2   Each employee employed ninety (90) days or more shall receive twelve (12) days of paid sick leave each calendar year accruing at the rate of one (1) day per month of substantial employment; retroactive to the date of hire. Leaves of absence for illness not exceeding three (3) months shall not be counted in determining substantial employment.

17.3   An employee shall be required to work at least three (3) weeks per month in order to earn or become eligible for a sick day.

17.4   Unused sick leaves shall be paid to employees at least one (1) week prior to Christmas time in each year, except that in the year this Agreement terminates or upon termination of employee for any reason whatsoever, it shall be paid on such respective termination date. When resigning, an employee must be employed one (1) year and shall give at least two (2) weeks advance notice of her/his resignation, unless reasonably unable to do so, in order to receive payment for accrued time.

17.5   Sick leave will be paid for as and when used.

## ARTICLE 18 – LEAVE OF ABSENCE

18.1   Any employee becoming ill shall be entitled to a leave of absence for an illness lasting up to six (6) months during any twelve (12) month period and said employee shall be entitled to reinstatement without loss of seniority. Any employee injured upon the job shall be reinstated upon recovery without loss of seniority or other benefits provided herein, such as holidays, sick days and vacation time, limited for one (1) year.

18.2   Any employee shall be entitled to a leave of absence for personal reasons, which privilege shall not be abused. The employee shall give written notice to the Employer that he is taking the leave of absence. The maximum allowable time shall be thirty (30) days.

18.3   In the event an employee is drafted or enlists in the armed services, said employee upon honorable discharge, shall be entitled to reinstatement to the position held at the time of joining the armed services and shall receive such rate of pay as shall at the time of reinstatement represent the current rate of pay, for that position, in the Employer's establishment.

18.4   Health and Benefits Fund as set forth in Article 29 shall be continued to be paid during the period of all leaves provided in this Agreement, for a period not to exceed two (2) months.

18.5   **Family Leave/Maternity Leave.**  Leaves of absence shall be granted for pregnancy for a period of up to twelve (12) months, commencing as of the time the pregnant employee leaves her employment and the said employee shall be entitled to reinstatement at the conclusion of such leave without loss of seniority. The provisions of the family leave act under Federal/State guidelines will be recognized for the duration of this agreement.

18.6   **Paternity Leave.**  In the event an employee's spouse gives birth to a child, then the employee shall be entitled to one (1) day of paid leave.

18.7   **Leave for Marriage.**  In the event an employee marries, the employee shall be entitled to two (2) days of paid leave.

18.8   **Leave for Study.**  An employee who wishes to undertake the schooling to qualify for a higher classification of work shall be granted a leave of absence for not more than two (2) years to complete such schooling. Upon proof of satisfactory completion thereof, the Employer shall grant such employees preferential hiring rights in the classification in which such employee is then qualified.

In the event an employee takes a Leave of Absence for Study, and such leave extends beyond one (1) year in duration, the Employer has the right to hire a temporary employee to fill the absence. Said temporary employee will not be a member of the bargaining unit and will be employed for a period not to exceed one (1) year. Temporary employees shall be paid the existing starting rate defined in the bargaining agreement for the job for which they are hired. The Employer agrees that no more than two (2) such temporary employees shall be employed concurrently.

18.9   The Employer shall provide medical benefits during all leaves, with the exception of personal leaves for a period not to exceed two (2) months.

## ARTICLE 19 – BEREAVEMENT LEAVE

19.1   In the event of death of spouse or child the employee shall be entitled to five (5) days paid leave. The employee shall be entitled to three (3) days of paid leave for immediate family. Immediate family includes parents, domestic partner, brother, sister, mother-in-law, father-in-law, grandparents, and grandchildren. In the event of a death of a member of the immediate family who lives out-of-town, additional time off is necessary. The Employer will grant reasonable additional time off without pay for the purpose of attending the funeral. The employee, if requested by the Employer, shall furnish verification of death.

## ARTICLE 20 – LEAVE FOR JURY DUTY

20.1   Employees called for Jury Duty shall be paid the difference between their regular pay and the amount they receive as Jury pay.

## ARTICLE 21 – MISCELLANEOUS PROVISIONS

21.1   **Malpractice Insurance.** Malpractice Insurance to be provided by the Employer at its own cost, as heretofore.

21.2   **Polygraph Test.** The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test. Any polygraph statement obtained on behalf of the Employer may not be used in any proceedings involving any employee within the bargaining unit, except in proceedings where the health and safety of the patients are or may be concerned.

21.3   **Scheduling.** Employers to provide one (1) weekend out of three (3) off, if possible alternate weekends. No reduction or change for those presently receiving better, past practice prevails.

21.4   **Breakage.** The Employer shall not deduct any monies from any employee for breakage or any other purpose, except if malicious, intentional or required by law and except herein expressly provided for.

21.5  **Accompanying Residents Off-Site.** The Employer will identify a job classification and work unit from which an employee will be assigned to accompany a resident off-site. Employees in the designated job classification and work unit will have the opportunity to volunteer for this assignment, rotating on an equitable basis. An alphabetized roster will be established which will be accessible to all employees for monitoring and tracking.

In the event no employee volunteers, the least senior employee in the designated job classification and work unit will be given this assignment. The Employer will provide a beeper to the Employee assigned to accompany a resident off-site and will arrange transportation back to the facility in the event of a *bona fide* employee emergency. Current criteria and practice with respect to utilizing Employees and overtime to accompany residents off-site will continue.

## ARTICLE 22 – UNIFORMS

22.1  The Employer agrees to furnish and maintain all uniforms of employees, except that where an employee furnishes and maintains his own uniform, such employee shall receive an allowance of one dollar ($1.00) per week. When an Employer has been furnishing and maintaining uniforms, he shall continue to do so unless the practice is changed by mutual consent. No deduction or prorating shall be made from the uniform allowance on account of illness or amount of hours worked per day, unless the employee is absent for the entire week.

## ARTICLE 23 – MAINTENANCE OF STANDARDS

23.1  The Employer shall not lower any wages, hours or working conditions. Any benefits of whatever kind or nature enjoyed by or hereafter given to an employee shall be continued during this Agreement. No private deals shall be made with any employee. No bargaining unit employees' work shall be done by non-bargaining unit employees.

## ARTICLE 24 – HEALTH AND SAFETY

24.1  The Employer recognizes its legal obligation to provide a safe and healthful work environment and agrees to comply with all relevant health and safety laws.

## ARTICLE 25 – MEDICAL EXAMINATIONS

25.1  Employees may be required to take medical examinations by the Employer's designated physician at times and dates specified by the Employer. The Employer shall give reasonable advance notice to the employees of such examinations. All medical examinations required by the Employer shall be paid by the Employer. Except that if an employee fails or refuses to take a medical examination at the time and date specified by the Employer, after receiving reasonable advance notice of such examination, the Employer shall be relieved of his obligation to pay for such examination and the payments therefore shall be payable by the employee. Medical Examinations, as referred to above, are solely for the purpose of annual examinations as required by the State Department of Health and this clause is not to be used for any other purpose.

## ARTICLE 26 – CHECK-OFF AUTHORIZATION

26.1  The Employer agrees to deduct no later than the first payroll day of each month from the wages of employees their membership dues and initiation fees and shall at the same time remit immediately said monies to the Union, together with a list of employees names for whom such deductions have been made and the amounts thereof, which shall be transmitted electronically. Provided that the Employer has received from each employee on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one (1) year or beyond the termination date of this Agreement, whichever occurs sooner. All funds deducted by the Employer shall be held as trust funds and shall not be commingled with other funds of the Employer. In the event the Employer fails to promptly remit such monies, the Arbitrator must, upon application, assess interest at the legal rate, reasonable attorney's fees and all costs of collection against the Employer.

26.2  An Employee may consent in writing to the authorization of the deduction of a COPE (Committee on Political Education) fund contribution from his/her wages and to the designation of the Union as the recipient thereof. Such consent shall be in a form acceptable to the Employer and shall bear the signature of the Employee. An Employee may withdraw his/her political action fund authorization by giving at least thirty (30) days notice in writing to the Employer. Within thirty (30) calendar days receipt of a favorable ruling from the IRS, or a reasoned tax opinion from Hartwyck's national healthcare tax counsel authorizing the same. the Employer shall deduct such COPE contribution from the pay of the Employees who request such deduction and shall transmit deductions to the Treasurer of the Union together with a list of Employees whose political action funds are transmitted at the time dues deduction are transmitted in the same manner.

## ARTICLE 27 – SAVINGS CLAUSE

27.1  In the event that any portion of this Agreement is invalidated by the passage of legislation or a final decision of a court or government agency having jurisdiction, such invalidation shall apply only to that portion thus invalidated and all remaining portions of this Agreement not invalidated shall remain in full force and effect. Any substitution for the invalidated portion, which is mutually agreed upon between the parties, shall be reduced to writing and shall thereupon become a part of this Agreement.

## ARTICLE 28 – CONTRACTING OUT

The Employer shall not subcontract out any of the bargaining unit work covered by this Agreement without the prior written consent of the Union. Such consent shall not unreasonably be withheld. If permission is granted by the Union, any contract or agreement between the Employer and an outside contractor who employs employees of the employer in job classifications covered by this Agreement shall comply with all the terms and conditions of this Agreement. Including but not limited to the seniority and lay-off provisions and the Employer guarantees the performance thereof by the contractor.

## ARTICLE 29 – 1199 BENEFIT FUND

29.1   Effective August 1, 2005 and subject to Trustee approval, the Employer shall make contributions to the 1199/SEIU Greater New York Benefit Fund ("Fund") for each employee covered by this Agreement at the rate of 21% of gross payroll of all bargaining unit employees which rate may be adjusted by the Trustees as necessary to maintain the level of benefits currently provided or as improved by the Trustees during the life of the Agreement subject to the following caps:

8/1/06 up to 22%
8/1/07 up to 23.5%

The method of calculation for gross payroll will remain unchanged from the previous agreement.

(a)     The above rates notwithstanding, if the Trustees approve a lower percentage of payroll in another collective bargaining agreement negotiated in 2005 with a different participating employer, who was a participating Employer prior to 2005, in New Jersey, then the Union shall notify the Employer and that percentage shall be offered to the Employer.

(b)     If the Trustees raise the rates above the percentages contained in Section 1 above, the parties will meet within thirty (30) calendar days of receiving notice from the Fund in order to negotiate modifications to the plan subject to Trustee approval, or other changes in the economic package provided it does not require the Employer more than the agreed upon amounts.  If the parties cannot agree, then the matter shall be submitted to interest arbitration based on the parties' "last best offers".  In no case shall the Arbitrator have the authority to impose increases in the percentage above those contained in Section 1 above.

29.2   Such contributions shall be paid by the Employer on or before the tenth day of each month and shall cover the previous month's employees covered by this Agreement.  In the event the Employer, without justification, fails to timely remit contributions, the Arbitrator may, upon application, assess interest at the legal rate against the Employer.

29.3   The payments so made by the Employer shall be used by the 1199/SEIU Greater New York Benefit Fund solely for those fringe benefits set forth in the Trust Agreement heretofore executed and thereafter amended establishing such 1199/SEIU Greater New York Benefit Fund. The parties understand that the 1199/SEIU Greater New York Benefit Fund will be held and managed under the terms and provisions of an Agreement and Declaration of Trust executed in connection with the said Fund.

29.4   The Employer shall furnish to the Union monthly a statement indicating the names of the Employees covered by this Agreement, their social security numbers and the amount of wages paid, or such other report, record or statement as shall supply such information, and agree to make available for inspection to the Trustees of the Fund all payroll records that may be required for the sound and efficient operation of the Fund, or which may be required by the insurance companies, if any, insuring the employees.

29.5   In the event a dispute arises in connection with the Employer's failure to make required contributions and the Union submits the matter to arbitration and prevails, the Arbitrator's decision shall include a directive requiring the Employer to pay all reasonable audit and accountants' fees, the full amount of the Arbitrator's fees, collection expenses including court costs, if any, and interest at the then current legal rate, together with reasonable attorneys' fees for the attorney representing the Union and/or the Fund in connection with the arbitration and/or court proceedings.

29.6   This Article does not change any individual employee's legal rights.

## ARTICLE 30 - NATIONAL INDUSTRY PENSION FUND

30.1   COVERAGE.  The Employer shall make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

30.2   TERM.  The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

30.3  CONTRIBUTIONS.  The Employer agrees to contribute to the Fund an amount equal to gross earnings of three and one-third percent (3 1/3%) for each employee who has completed her/his probationary period and is covered by the Agreement from the employee's initial date of employment or the effective date of the Collective Bargaining Agreement, whichever is later. The method of calculation for gross payroll will remain unchanged from the previous agreement.

(a)  Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine

(b)  Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

30.4  TRUST AGREEMENT.  The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board

30.5  COOPERATION.  The Employer and Union agree to cooperate with the Trustees of the Fund in distributing  Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retire Income Security Act.

30.6  APPROVAL BY TRUSTEES.  The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided.  Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement.  The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees

covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

## ARTICLE 31 – PAYMENTS & ENFORCEMENT

31.1   Insofar as payments by the Employer to the Funds are concerned, time is of the essence. The regular and prompt payments of contributions due to the Funds are essential to the stability of the Funds and to the prompt payment of benefits. It would be extremely difficult, if not impracticable to fix the actual expense and damage to the Funds which will result from the failure of the Employer to make payments in full within the time provided.

31.2   In the event a dispute arises in connection with the failure of the Employer to make the required payments provided for in this Agreement, and in any event the Union submits the matter to arbitration, the Arbitrator's decision shall contain a directive that the Employer pay all the full amount of the Arbitrator's fees, collection expenses including Court Costs, if any, interest at the current legal rate, and all reasonable attorney fees for any attorney representing the Union and/or the Funds in connection with the arbitration and court proceedings.

31.3   Employer Remains Liable for Loss of Benefits - Notwithstanding the foregoing provisions, if any employee should be disentitled to any benefits under the Funds by reason of an Employer's delinquency in the payment of contributions, such Employer shall be liable to such Employee in a civil action, for the full amount of the benefits which the employee lost, together with reasonable attorney's fees and costs. Acceptance or collection of delinquent contributions by the Funds shall not absolve the Employer of this liability.

31.4   The Employer shall make prompt payments in full of all monies required to be checked off under Article 26 and all payments required to be made to the Funds under Articles 29, 30, and 32. Failure to make full payments by the above mentioned dates shall constitute a breach of this Agreement and upon written notice in accordance with applicable law by certified mail to the Employer, the Union, notwithstanding anything to the contrary contained in this Agreement, shall have the right, with the exception of the Pension, to strike and remove the employees from the establishment until the Employer pays the full amount of all

monies then due and also pay the employees who are on strike for all time lost during such strike. Any Employer, who becomes delinquent with payments, as hereinabove provided, shall be required to post bond to secure future payments. Resort to a remedy under the Agreement or under the Agreements and Declarations of Trusts for the collection of contributions due the Funds shall not be deemed a waiver of the rights to resort to any other remedy provided therein or bylaw. Resort to one (1) remedy at one (1) time shall not be deemed a waiver of the right to resort to other remedies at a prior, the same or at a subsequent time.

31.5  After reasonable notice has been given, the Union and any authorized agents or representatives of the Funds shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine, audit, and copy such of the books and records of the Employer, to permit the Union and the Funds to determine whether the Employer is making full payments of the amounts required by the Agreement. When an Employer is found to have a deficiency in the audit, the Employer shall immediately pay the additional contributions owed to the Union and the Funds.

## ARTICLE 32 – TRAINING & EDUCATION FUND

32.1  One half percent (1/2%) of payroll shall be contributed to the Training & Education Fund. This percentage will be based on payroll as currently calculated with the Greater New York 1199 Benefit Fund. The parties agree that the benefit calculation as currently provided by the fund will not be changed for this facility during the term of this Agreement.

## ARTICLE 33 – MANAGEMENTS RIGHTS

33.1  The management of the establishment and the direction and control of the property and work force shall remain with the Employer. The rights herein described shall include but not be limited to: the right to hire, lay-off, discharge for just cause, in case of emergencies to require that duties other than those normally assigned be performed, except that "emergencies" shall not exist for longer than two (2) days, to make reasonable working rules and regulations of procedure and conduct, and to determine work shifts; provided however, that the exercise of all these rights must be consistent with the terms and conditions of this Agreement and are not to be used so as to discriminate against any person by reason of Union membership.

## ARTICLE 34 – LABOR/MANAGEMENT COMMITTEE

34.1 **Composition.** Issues of health and safety may be discussed at Labor Management Committee in accordance with Article 25, Sections A, B and C. The employer will continue to make every effort within their means to identify and eliminate workers compensation hazards (i.e. low beds) from the facility. The Employer and the Union agree that they will establish a joint committee not to exceed three (3) members representing the Employer and three (3) Shop Delegates representing the membership, for the sole purpose of meeting together to apprise each other of and discuss problems, concerns, suggestions and ideas related to the facility, the work force, and resident services, in an effort to promote better understanding between the parties. Within thirty (30) days after the execution of this Agreement, or as soon thereafter as practicable, each party shall inform the other, in writing, of the composition of its respective committee members. Any subsequent changes in the composition of each party's committee members shall be promptly submitted to the other party in writing.

34.2 **Meetings.** The committee shall meet on work time at mutually agreed times and places. Said meetings shall not exceed one per calendar year quarter, except by mutual agreement, and each meeting will not exceed one hour in duration. An employee member of the Union shall be paid the appropriate wage for time spent attending such meetings.

34.3 **Limitations.** Meetings held pursuant to this article shall not be for the following purposes: (i) initiating or continuing collective bargaining; (ii) modifying, adding to, or detracting from the Agreement; (iii) processing, resolving or dealing with grievances in any manner whatsoever; or for any other purpose not expressly provided in Section 34.1 above. Further, said meetings shall be exclusive or the grievance and arbitration provisions of this Agreement since grievances are not proper subjects at said meetings. Therefore, the Union does not waive its right to grieve and arbitrate any issue which maybe otherwise grievable pursuant to the terms of the Agreement, should such issue be raised by either party to any meeting referenced herein. The parties further agree that the Employer's practice of meeting directly with employees to discuss problems, concerns, suggestions and ideas not relating to the terms and conditions of employment, the collective bargaining agreement or possible imposition of discipline will continue and that the purpose of the Labor Management Committee is not to supplement or impede that practice.

## ARTICLE 35 – CREDIT UNION

35.1   Agree to utilize union credit union and/or the employer's credit union

## ARTICLE 36 – NEUTRALITY

36.1   Any additional classification(s) not presently covered within JFK Hartwyck at Edison Estates shall become part of this agreement when the union represents a majority of employees within such classification(s) and shall be subject to separate negotiations concerning wages and terms and conditions of employment between the parties.  The determination of whether the Union does in fact represent a majority, if it be disputed, shall be determined in accordance with the arbitration procedures of this Agreement.

36.2   Notwithstanding the above, the Union agrees not to initiate or encourage organizing activity within JFK Hartwyck at Edison Estates and initiate or encourage organizing activity within any Solaris Health system affiliated facility for the duration of this contract.

## ARTICLE 37 – PATIENT CARE CONCERN

37.2   Along with management, the Union recognizes the obligations of its members to render good patient care with warmth and compassion so as to transmit to the patient a sense of security and dignity. The Union offers its full cooperation in fostering these patient care values.

## ARTICLE 38 – STAFFING AND PATIENT CARE

38.1   Management shall post vacant positions within the facility and identify the position(s) as union or non-union. Issues of staffing and patient care may be discussed in the Labor Management Committee.

## ARTICLE 39 – PARTIES

39.1  This Agreement shall be binding upon the parties hereto, their successors and assigns and shall apply to all establishments now or hereafter owned, operated or controlled by the Employer. If the Employer shall sell, transfer or otherwise dispose in whole or in part of its business, merge or consolidate it with that of any other person, firm or corporation, the agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the terms and conditions of this Agreement. Further, that it shall retain in its employ all employees then employed in the business, that the person, firm or corporation that thereafter operates the business shall be personally responsible for all unpaid wages, fund payments, vacations, holidays, sick leave and all other monetary items. The Employer shall give prior notice of the existence of the Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation Covered by this Agreement or any part thereof. Such notice shall be in writing and a copy served upon the Union at the time the seller, transferor or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction excluding financial details. In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Agreement, the Employer shall be liable to the Union and to the employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Agreement. *Any* dispute of whatsoever kind or nature arising under this Article shall be subject to the arbitration procedure herein and the Arbitrator has jurisdiction to determine the same and issue a decision awarding any sums of money and damages. In case of HRF facilities, the parties will establish appropriate categories.

## ARTICLE 40 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT

40.1  The terms and condition of employment as set forth in this Agreement shall govern the relations between the Employer and his respective employees and no deviation from or modification of said terms and conditions of employment should be permitted. However if prior to this Collective Bargaining Agreement with the Union, the employees of the Employer enjoyed more favorable terms and conditions than such shall continue.

## ARTICLE 41 – DURATION

41.1   THIS AGREEMENT SHALL BECOME effective from April 1, 2005, and shall remain operative and binding upon the parties hereto, their heirs, successors, assigns, administrators, concessionaires and others, and shall apply to all present and future establishments until May 31, 2008. If, for any reason, the Employer shall change its name or status, or the Union shall change its name or status, affiliation or status, it is agreed that such changes shall in no manner modify or affect the binding obligations of this Agreement. The Union shall have the right ninety (90) days to one hundred twenty (120) days prior to the expiration of this Agreement to reopen and negotiate wages (minimum and across the board increases), hours and general terms and conditions of employment.

41.2   This Agreement shall not be changed, altered, modified or amended, unless in writing and signed by the authorized representative of the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

EMPLOYER
JFK HARTWYCK AT EDISON ESTATES

By: _____

UNION
SEIU 1199 NEW JERSEY

By: _____

Sharon Brown

Jacqueline Cuffy

Betty Height

Margaret Arrone
Cheryl Merritt
Dorothy Simmons
Sally Jackson

## SCHEDULE A – EDISON ESTATES

### A. WAGE INCREASES
*(Based on thirty-seven and one-half (37 1/2) hours per week.)*

\*Grade 1 Includes: Ward Clerks, Orderlies, Attendants, Diet Aids, Dishwashers, Kitchen Helpers, Porters, Maids, Laundry Workers, Housekeeping, and Recreation Aides.

**Current**

| Job Title | Post Prob |
|-----------|-----------|
| Gr 1 | $ 9.89 |
| C.N.A | $ 9.89 |
| LPN | $ 18.00 |
| Cook | |
| Maintenance | |

**Eff. 5/1/05**

| Job Title | Post Prob |
|-----------|-----------|
| Gr 1 | $ 9.25 |
| C.N.A | $ 10.24 |
| LPN | $ 18.63 |
| Cook | |
| Maintenance | |

**Eff. 5/1/06**

| Job Title | Post Prob | eff 11/1/06 1 Year | eff 11/1/06 2 Yrs | eff 11/1/06 3 Yrs | eff 11/1/06 4 Yrs |
|-----------|-----------|--------|--------|--------|--------|
| Gr 1 | $ 9.46 | $ 9.65 | $ 9.84 | $ 10.04 | $ 10.24 |
| C.N.A | $ 10.47 | $ 10.68 | $ 10.89 | $ 11.11 | $ 11.33 |
| LPN | $ 19.05 | $ 19.43 | $ 19.82 | $ 20.22 | $ 20.62 |
| Cook | | | | | |
| Maintenance | | | | | |

**Eff. 5/1/07**

| Job Title | Post Prob | 1 Year | 2 Yrs | 3 Yrs | 4 Yrs | eff 11/1/07 5 Yrs |
|-----------|-----------|--------|-------|-------|-------|--------|
| Gr 1 | $ 9.67 | $ 9.86 | $ 10.06 | $ 10.26 | $ 10.47 | $ 10.68 |
| C.N.A | $ 10.70 | $ 10.92 | $ 11.13 | $ 11.36 | $ 11.58 | $ 11.82 |
| LPN | $ 19.48 | $ 19.87 | $ 20.26 | $ 20.67 | $ 21.08 | $ 21.51 |
| Cook | | | | | | |
| Maintenance | | | | | | |

B.    MINIMUM WAGES

Minimum wages shall at all times be $10.00 per week over and above the highest minimum wage set forth in federal, state, city or local statutory minimum wages.

C.    PRIOR CBA

Newly hired Employees throughout the duration of the prior collective bargaining agreement may have been hired at forty-five dollars ($45.00) per week below the minimum hiring rate and receive a ten dollar ($10.00) per week increase after thirty (30) days of employment. LPNs hired throughout the duration of the prior collective bargaining agreement shall have been hired at twenty dollars ($20.00 ) per week below the minimum hiring rate and receive a ten dollar ($10.00) per week increase after thirty (30) days.

All Employees hired on or after the effective date of this Agreement may be hired at ten ($10) dollars per week below the Hiring Rate and receive a ten ($10) dollar per week increase after thirty (30) days of employment.

D.    LONGEVITY PAY

Employees after nine (9) years of employment in the establishment shall receive a length of service increase of six dollars ($6.00) per week and an additional two dollars ($2.00) per week for each additional three (3) years of service in the establishment, up to eighteen (18) years if service. The longevity increase will cap at twelve dollars ($12.00).

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

SEIU 1199 NEW JERSEY

BY _____

AUTHORIZED SIGNATURE

JFK HARTWYCK AT EDISON ESTATES

BY _____

AUTHORIZED SIGNATURE

TITLE

## SCHEDULE B: CERTIFICATION OF DOMESTIC PARTNERSHIP

1.    I _____, and _____, reside together and intend to do indefinitely at: _____ and share and depend upon each other for the common necessaries of life.

2.    I affirm that this domestic partnership has been in existence for a period of _____ consecutive months prior to the date identified on this Certification.

3.    Each of us at least eighteen (18) years of age.

4.    Neither of us is married to anyone.

5.    We are not related to each other by blood closer than would bar marriage and we are mentally competent to consent to contract.

6.    Each of us is the other's sole domestic partner and we intend to remain so indefinitely.

7.    I, _____, understand that another Certification of Domestic Partnership cannot be filed until one year after notifying the Employer of termination of the previous partnership.

8.    I provide the information in this Certification to be used by the Employer for sole purpose of determining eligibility for benefits. I understand that this information will be held confidential and will be subject to disclosure only upon my express written authorization or pursuant to court order.

9.    We are not in this relationship solely for the purpose of obtaining benefits.

10.    If I supply false information in this declaration, Hartwycks may: 1) recover benefits improperly paid and 2) initiate disciplinary action which may include termination of employment.

_____        _____
Employee Signature                     Date